Snags He's making it worse. May it please the court, we will hear this morning from the Patent and Trademark Office in this case of something a little more fun as we approach spring, about fishing and fishing hooks. The PTO will be trying to drive home the point that the selection of color in two different types of fishing hooks is a matter of routine experimentation. On the other hand, I will be... You make a pretty big distinction between a hook and a lure. I do, Your Honor. Is that a justified distinction? It is, Your Honor. In fact, in the record, the Board of Appeals made this very distinction in allowing claims over one of the secondary references in the case of light transmissive orange and green fishing hooks. And this distinction is that the hook is disintegrated from but attachable to a lure. So there is a difference between... The lure is so often built into the hook in this area, isn't it? To a point where they can become indistinguishable except that there's a barb at the end of what you want to call a hook, but the hook is colored so as to be part of the lure. Where does the hook start and the lure end? This is why the claim, Your Honor, recites that the hook is a hook per se, which is to say that it is disintegrated from but attachable to a lure. A hook may be a component of a lure. On the other hand, a lure is not a component of a hook. So we have a building block, a hook, and then we have one of the possible uses of a hook in a lure. Another possible use of a hook is as a hook and used with bait. If we find it hard to determine where the hook starts and the lure ends in the prior art, does that prejudice your case? In this particular case, the answer is no. First, I think the record is clear that there is such a thing as a hook per se. Secondly, if we are talking about the light transmissive fishing hooks of red, orange, yellow, green, blue, or purple, and particularly orange, claimed in Claim 25, those particular hooks are colored a specific color. If we take a look at the patent to Lopeb, now this is a secondary reference. This particular patent says that the body of the lure is an imitation of an insect, and this perhaps roughly would correspond to the shank of a hook, and this body is lightly colored and translucent. Now, the portion that comes out from the body, which otherwise would be a hook being inserted through, is simply to be translucent. Near the bottom of column one, you'll see there's no mention of color made for the hook, and the reason is the lure is thought to attract the fish with color. Art of record, including Technology Illustrated and SITN, well, Technology Illustrated in particular, show that people thought that to make the hook less visible, it should be, shall I say, invisible. And how to do that? Avoid color. Colorlessness in a transparent fishing hook was the epitome or the embodiment of the wisdom in the art to avoid detection by fish. So, we will hear of routine experimentation, and I will point out that the claims have been... I caught 200 pounds of salmon tying a orange piece of yarn to a hook in Alaska. Now, why wouldn't it be obvious to one of skill in the art to just make the hook orange as well? When did you catch the salmon, Your Honor? They were running. Okay. This case is 26 years running, this case. I think the salmon have been running longer than that. And just shortly before the application was filed, during the prosecution of the application, when I spoke with Mr. Joe Bartel of the Wright and McGill Company, only then was I informed that red was employed as a color in an opaque fishing hook, never orange, never green, at least the two claims colored. Later, orange and green did come up out. Now, if you tied a piece of yarn to a hook, that... That's all, just a piece of yarn at the end of the hook, just tied it on. Tied a streamer, and that turns these two components into a lure, a hook disintegrated from a lure. But why wouldn't one of skill in the art say, well, let's make the whole thing orange? Why wouldn't he? Perhaps the question is, he didn't, because methods that used these hooks have been allowed, repeatedly allowed, over three boards at the patent office, and this characteristic of these hooks was simply not known. These hooks are novel. And this characteristic, then, because it's a new characteristic, and it applies to new hooks, was the basis for allowable method claims. I have two questions. One... Yes, Judge. You said it's a new characteristic. What evidence is there that there is any particular characteristic exhibited by these colored hooks? Other than, I mean, there are some declarations that indicate some preference, but why isn't it just a matter of choice as to whether you make it orange, green, purple, yellow? In the first instance, the hook was novel. In the second instance, the selection was not a matter of routine choice. It certainly is a matter of choice. It's a matter of inventive choice, I submit. Well, my question is, why? Why do you characterize it as inventive choice? Because the corresponding method claims that employ these particularly colored hooks have been allowed again and again. Right? That's irrelevant, what's allowed and what isn't allowed. The question I'm asking is, why should these claims be allowed? Because... Maybe the other method claims shouldn't have been allowed. I don't think so. After 25 years and three boards and one retired examiner and another. But the idea that a fish hook can be less visible to a fish based on color, rather than, in the case of a translucent hook, a lack of color, that is certainly novel and it is certainly unobvious to employ color to do that. But we would think that... Why do you say that? What indication we have that it is not obvious, that it is a patentable leap forward. I mean, I heard you say that, but what evidence do you have? Are there unexpected results? Are there something you can point to as evidence of this inventive step? In the sense of test results, I don't have them. The Hill patents, Professor Hill had taken lures and taken colors for lures and found out that fish were attracted to certain colors under certain water conditions. And this application has the colors applied to a hook and then determined that they would be less attractive under certain water conditions, certain colors. All right. Thank you. Thank you, Mr. Rudy. By the way, in truth, I think my brother caught 180 pounds and I caught about 20. So let's correct the record on that. Ms. Stewart. May it please the court. I'd like to address a few of the points that Mr. Rudy made. He said that colorlessness is not part of the wisdom. Colorlessness is not the wisdom in the art, is what he said. But I think what the art already shows is the entire gamut of colors and colorlessness. But the board doesn't really address the hook lure distinction, the color being there to attract in the case of a lure and the color being there to render invisible in the case of the hook. The board doesn't really grapple with some of that. I think the board does touch on it, Your Honor, because the board talks about the lube reference disguising the hook as part of the lure in that case that it's integrated to. It says that the hook will have a light color, that the lure has a light color, and therefore the hook within that particular lure will scarcely be able to be detected. That's the lube reference that the board relies on. So I do think that the board has addressed the difference between a lure and a hook, and given Mr. Rudy the benefit of the doubt because they specifically chose, or I should say the examiner specifically chose the sit-in reference because that was a stand-alone hook. Mr. Rudy tells us that he has distinguished the lube reference. However, does he succeed? It's the officer's position that he has not succeeded, and the reason for that is that, as I stated, lube teaches color. It teaches a light color that can match the color of the lure. So in order, as Your Honor's alluded to, in order for Mr. Rudy to overcome what's already been admitted and taught in these references, he would need to show something unexpected that his colors are providing, which he has been unable to do, as he admits here today. His rebuttal evidence is merely that the colors are pleasing or attractive to certain family and friends, some of whom are not expert in fishing. So given that colored hooks and metal hooks and translucent hooks are already taught, that level of anecdotal evidence certainly does not overcome a strong obviousness rejection. And you rely in particular in lube on the description of the translucent plastic material of a light color? Yes, Your Honor, because one of the features of the claim is that the hooks are light transmissive. So both sit-in and lube, as well as admitted prior art, carry those characteristics. You're not troubled by that being a lure to attract fish, as opposed to Mr. Rudy's contention that his hooks are the ice cube in the martini. They're invisible. I'm not troubled by that, Your Honor, because sit-in, although it's a design patent, is teaching a translucent hook. So theoretically that is intended to be invisible, although that's not taught in that design patent. Additionally, lube is specifically stating as something intended to disguise the hook. So we already have hooks in the art that are meant not to attract the attention of the fish. We also have evidence in the record that hooks can be used to attract fish. One of Mr. Rudy's own declarations, it says that red hooks used in salmon fishing, the hook itself attracts the fish, in addition to lures that are typically known as attracting fish. So no matter how you slice it, the absence of color, color, a standalone hook, a hook and a lure, or a lure, all the elements of Mr. Rudy's invention are taught alone and in combination. For that reason, we believe that the Board made a correct decision in affirming the rejection of the examiner that these claims are obvious. I just have a sort of procedural question. How is it that this application is still pending? It was filed in 1989, I believe. Actually, Your Honor, it was filed in 1988. 1988, I stand corrected. How is it that it's still pending? Well, I think the explanation is, in this instance, a benign one. I think we have an agency acting in good faith to consider all of Mr. Rudy's arguments. And Mr. Rudy is a very zealous advocate on his behalf. He has filed 13 amendments to his claim in the face of rejection of the office. He's filed seven petitions. He's filed for eight extensions of time. He's filed 29 miscellaneous letters to the office, which have been responded to. And he's enjoyed three board appeals. He's also had his application completely rejected as being abandoned for failure to comply with the timing requirement and then resuscitated by the office to be reconsidered again. So, for all these reasons, I think the length of time here reflects both the careful consideration of the office and the advocacy of Mr. Rudy himself. I see. When this patent issues, it will have a 17-year term from the issue date? Yes, Your Honor. I see. Well, remarkable. Thank you. Thank you. Ms. Stewart, Mr. Rudy, you have five minutes. Thank you, Your Honor. The characterization that lobe in a light transmissive portion to a hook carries color is inaccurate. Lobe in the appendix provided by the Patent and Trademark Office at A754 in column one, lines 27 through 45, says that a light color may be applied to the body, as I mentioned earlier in argument, but there is no mention of color in the portion of the hook, the barb and the band that come from there. There is no mention of color. The idea that color would be less attractive to fish was not known in the art with respect to a hook, and these hooks, I will emphasize, are novel and that the property of an article and its properties are inseparable. They help define what that article is. And with a novel article, a new property that has been the basis for allowed claims numerous times over this dreadfully long prosecution have been allowed, allowed, allowed. Thank you, Mr. Rudy.